## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

JAMES F. ROGERS, III                                 \*

                                                                            CIVIL ACTION
                            Plaintiff          \*       NO. 3:01CV8 (CFD)

        VS.                                             \*

FIRST UNION NATIONAL BANK                  \*

                                                                            January 29, 2004
                            Defendant       \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*    \*

### JOINT TRIAL MEMORANDUM

I.    **TRIAL COUNSEL.**

The plaintiff's trial counsel is Reine Boyer, Esq., Law Offices of Reine C. Boyer, 111 Prospect Street, Suite 400, Stamford, Connecticut 06901, telephone (203) 967-4422; facsimile (203) 967-8822.

The defendant's trial counsel is Michael N. LaVelle, Esq., Pullman & Comley, LLC, 850 Main Street, Bridgeport, Connecticut 06604; telephone (203) 330-2000; facsimile (203) 576-8888.

II.    **JURISDICTION.**

The Court has federal question jurisdiction, 28 U.S.C. § 1331, because the plaintiff's claim arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

III.    **JURY - NON-JURY.**

The plaintiff has claimed this case for a jury.

IV.    **NATURE OF CASE.**

There are two counts to the complaint, both of which allege age discrimination in the defendant's decisions to choose an applicant for a position other than the plaintiff, one instance being a reorganization selection process called Future Bank Initiative ("FBI") in March, 1998, and the other instance being an opening for a position of Financial Specialist Sales Leader in May, 1998. For each count the plaintiff seeks economic damages of lost pay and benefits, other damages as allowed by statute, and attorney's fees and costs.

For each count, the plaintiff asserts a cause of action under the federal discrimination statute, the Age Discrimination in Employment Act, and the state discrimination statute, the Connecticut Fair Employment Practice Act.

V.    **STIPULATIONS OF FACT AND LAW.**

1.    This is a civil action brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621-634 et. seq., particularly §626, claiming employment discrimination on account of age.

2.    Plaintiff also alleges claims under the Fair Employment Practices Act, Connecticut General Statutes, §46a-60 et. seq., arising out of the same set of operative facts as the federal claim.

3.    Jurisdiction is specifically conferred on this court pursuant to 28 U.S.C. §1337.

4.    Venue is appropriate in the District of Connecticut.

5.    On or about December 16, 1998, the plaintiff filed a complaint of age discrimination against the defendant with the Connecticut Commission on Human Rights and Opportunities and with the Equal Employment Opportunities Commission.

6.    More than 60 days having elapsed since the filing of said complaint, on or about October 16, 2000 the plaintiff received his "right to sue" letter from the Equal Employment Opportunities Commission.

7.    Plaintiff has complied with all administrative requisites to suit.

8.    Plaintiff's date of birth is October 4, 1940.

9.    At the time of the incidents complained of, the plaintiff was within the protected class of older workers contemplated by federal and state law.

10.    The defendant is a banking company with its headquarters offices in Charlotte, North Carolina, and throughout the eastern part of the United States employs thousands of employees.

11.    The defendant is duly qualified and licensed in the State of Connecticut.

3

12.    The plaintiff became an employee of the defendant on or about November 15, 1996, when plaintiff's former employer, CenterBank, was merged into the defendant bank.

13.    Thereafter the plaintiff was an employee of the defendant located at its office in Ansonia, Connecticut.

14.    The plaintiff's title in employment with the defendant was Assistant Consumer Bank Manager.

15.    Commencing approximately in November, 1997, the defendant undertook a bank-wide reorganization of its consumer lending operations which came to be known as FBI, for Future Bank Initiative.

16.    In approximately February, 1998, the plaintiff received notice to the effect that his position would be eliminated pursuant to the FBI reorganization process and that he should apply for one of several newly-designed positions.

17.    The plaintiff made appropriate application for the newly created positions of Financial Specialist Sales Leader and of Customer Relations Leader.  The plaintiff made a third application for the position of Staffing Coordinator.  The plaintiff participated in the interview and testing process that was part of the FBI reorganization.

18.    Following his interviews and tests, the plaintiff was notified on or about March 5, 1998 that he was not selected for either the new position of Financial Specialist Sales Leader or of Customer Relations Leaders.

19.    On or about March 10, 1998, the plaintiff presented an appeal of this decision in the appeals process prescribed by the defendant for FBI.

20.    On or about March 12, 1998, plaintiff was notified that his appeal had been denied.

21.    On or about April 21, 1998, the plaintiff was offered the position of Staffing Coordinator.

4

22. The plaintiff's annual salary as Assistant Consumer Bank Manager had been $63,600.

23. The pay range of the Staffing Coordinator position was $19,400 to $38,200.

24. On or about April 1, 1998, the plaintiff commenced a further appeal of the FBI decision.

25. On or about May 15, 1998, the plaintiff was notified that his further appeal was denied.

26. On or about May 14, 1998, the plaintiff applied for an opening that was available in the position of Financial Specialist Sales Leader.

27. On or about June 19, 1998, the Plaintiff was informed that he had not been selected for the opening of Financial Specialist Sales Leader.

28. The plaintiff refused the position of Staffing Coordinator and was separated from employment effective June 30, 1998.

29. The Financial Specialist Sales Leader position had a pay range of $56,200 to $114,600.

30. The Customer Relations Leader position had a pay range of $45,800 to $92,100.

31. For FBI applications, the defendant's Connecticut branch operation was divided into a northern cluster and a southern cluster, and the plaintiff chose to compete within the southern cluster.

32. Within said southern cluster, there were two available positions of Customer Relations Leader and four available positions of Financial Specialist Sales Leader.

33. Within the southern cluster, there were 28 applicants for the available positions of Customer Relations Leader and Financial Specialist Sales Leader.

34.    The FBI testing process consisted of four components, which were applied throughout the defendant's multi-state branch bank system.

35.    The four FBI testing components were a leader application form, for crediting education and experience; a panel interview known as Target Selection; an average of an applicant's last three annual performance review ratings; and a graded response to hypothetical business problems shown in video tape vignettes known as Accuvision.

## VI.    PLAINTIFF'S CONTENTIONS.

a.    The plaintiff participated in First Union's (now known as Wachovia National Bank) bank-wide reorganization known as FBI.

b.    Plaintiff has had over thirty years experience in banking.

c.    Plaintiff's employment record while employed with First Union was exemplary.

d.    Being duly qualified, plaintiff applied for two positions during the FBI process; Financial Specialist Sales Leader and Customer Relations Leader.

e.    The salary for these two positions were within the range of Plaintiff's salary of $63,600 in his then current position as Assistant Consumer Banking Manager with First Union.

f.    In participating in the FBI process, plaintiff engaged in the four components of the FBI process.

g.    Plaintiff duly filled out the application form, participated in the panel interview known as Target Selection, participated in the graded response component known as Accuvision and lastly permitted his last three annual performance review ratings to be reviewed.

h.    In participating in the FBI process, plaintiff chose the Southern cluster.

6

i.    With respect to the application form component, the defendant's methodology of crediting applicants for their years/level of experience did not properly credit those applicants whose years/level of experience reached beyond ten years. Specifically, this methodology assigned credit for 1 year, 5 years, 10 years, but did not go beyond in assigning additional credit to those applicants whose years of experience reached beyond 10 years. Therefore, with this scoring methodology, an applicant whose level of experience is 30 years was assigned the same score an applicant whose level of experience is only 10 years.

j.    With respect to the job performance evaluation component, plaintiff's job performance was always exemplary and his overall score was among the highest within the pool of candidates.

k.    Another component of the FBI Selection process; the Accuvision video, demonstrated substantially younger actors in "sales vignettes" that were not relevant to the positions for which plaintiff made applications.

l.    With respect to the panel interview component, plaintiff's choice of the Southern cluster required an interview with Ronald Prestwich and Heidi Siebert.

m.    The panel interview component was subjective. Plaintiff's overall panel interview score was a 54.

n.    Although defendant stated that the four components would all be used to select applicants during the FBI process, when the position of financial Sales Specialist Leader became available in May, 1998, defendant changed its original position and used the scores from the panel interview as the only criteria.

o.    Defendant stated with respect to remaining positions, it would only choose from applicants who were within the FBI category, defined as those applicants who had not accepted an FBI position over non-FBI

7

candidates, defined as those individuals who had already accepted positions within FBI.

p.    At the time the Financial Specialist Sales Leader position became available in May, 1998, plaintiff was the only candidate remaining who had not accepted a position within the FBI process.

q.    Despite its earlier announcement that it would only choose from remaining FBI candidates, the defendant changed its position.

r.    The successful applicant for the Financial Specialist Sales position that became open in May, 1998 was Dorothy Aiken, who was substantially younger than plaintiff, a direct report of Ronal Prestwich who conducted both plaintiff's and Ms. Aiken's interview and also a candidate who was non-FBI.

## VII.  DEFENDANT'S CONTENTIONS.

a.    The defendant First Union (now known as Wachovia National Bank) undertook a bank-wide reorganization of its consumer lending operations, i.e., its branches, which came to be known as FBI, for Future Bank Initiative.

b.    The FBI process began approximately in November, 1997 and concluded in approximately March, 1998.

c.    The FBI process consisted of four testing components, which were applied throughout the defendant's multi-state branch bank system, referred to as the consumer bank.

d.    The four components were a leader application form, which credited education and experience; a specially designed panel interview known as Target Selection; an average of an applicant's last three annual performance review ratings; and a graded response to hypothetical

business problems shown in videotape vignettes, known as AccuVision.

e.    The four testing components each received a numerical percentage score, and the total FBI score was an average of the four test component scores.

f.    The defendant's Connecticut branch operation was divided into a northern cluster and a southern cluster. The plaintiff was given the option of competing in either cluster, and chose the southern cluster.

g.    The plaintiff had become an employee of the defendant in 1996 as a result of the defendant's merger with CenterBank, the plaintiff's previous employer. Plaintiff had the position of assistant consumer bank manager with an annual salary of $63,600.

h.    As part of the FBI process, the plaintiff was required to express a preference for three positions. He chose the Financial Specialist Sales Leader with a pay range of $56,200 to $114,600, and the Customer Relations Leader, with a pay range of $45,800 to $92,100. These were both highly competitive, senior positions. For his third position he chose Staffing Coordinator, with a pay range of $19,400 to $38,200.

i.    In the southern cluster, there were two positions available of Customer Relations Leader and four positions of Financial Specialist Sales Leader. There were 28 applicants for these positions.

j.    The total scores of the six successful applicants ranged from 76 to 66. With a total score of 60, the plaintiff was 20th out of the 28 applicants. The ages of the successful applicants were 35, 37, 40, 43, 44 and 47.

k.    In May, 1998, a position of Financial Specialist Sales Leader became open. The plaintiff was one of 12 applicants for the vacant position. The selection was made on the basis of the Target Selection interview score.

9

l.   The successful applicant for the vacant Financial Specialist Sales Leader position was Dorothy Aiken, age 50 at the time. Her TS interview score was 76. With a TS interview score of 54, the plaintiff was 10th of the 12 candidates for the vacant position.

m.   The Plaintiff was offered the Staffing Coordinator position, but declined and left the bank.

n.   The FBI process was applied in the same way throughout the defendant bank. No individualized decisions were made with respect to any of the available positions. There is no evidence, circumstantial or otherwise, of the plaintiff's age being a motivating factor with respect to either the FBI process or the Financial Specialist Sales Leader vacancy.

o.   Additionally, with respect to the claims under the Connecticut Fair Employment Practice Act, Section 46a-60 et. seq. and Section 46a-104, Conn. Gen. Stat., the affirmative defense of statute of limitations applies to the FBI selection claim because the plaintiff did not file his complaint with the Connecticut Commissions on Human Rights and Opportunities within the 180-day period required by Section 46a-82(e).

## VIII.   LEGAL ISSUES.

1.   Plaintiff's Issue:

Plaintiff maintains that his claim under the Connecticut Fair Employment Practices Act, Section 46a-100, Conn. Gen. Stat. is not timed bar in that plaintiff's original age discrimination claim filed with the Commission on Human Opportunities contemplates his claim under Sec. 46a-100.

2.   Defendant's Issue:

With respect to the plaintiff's claims pursuant to the Connecticut Fair

Employment Practice Act, Section 46a-100, Conn. Gen. Stat. allows a civil action by any person who has "timely filed a complaint" with the Commission on Human Rights and Opportunities. A complaint is timely if it is filed within 180 days after the act of discrimination complained of. Section 46a-82(e). The plaintiff filed his complaint with the Commission on Human Rights and Opportunities on December 16, 1998. The 180 day filing period extends no earlier than June 19, 1998. The plaintiff was notified that he did not receive his preference choices in the FBI process on April 21, 1998. The legal issue is whether a cause of action pursuant to the Connecticut Fair Employment Practice Act with respect to the FBI selection process (Count Three) is timely.

## IX.  VOIR DIRE QUESTIONS.

The parties would like the following voir dire questions:

1.  Is any member of the panel, or any close family member, a present or past employee of First Union (now Wachovia National Bank)?

2.  Has any member of the panel, or any close family member, been a customer of First Union National Bank, or transacted any business with First Union National Bank, and if so, is there anything about that experience which would affect service on the jury?

3.  Has any member of the panel, or any close family member, been fired from a job, or had their position eliminated, and if so, is there anything about that experience which would affect service on the jury?

4.  Has any member of the panel, or any close family member, been terminated from employment or denied employment because of age?

5.  Is any member of the panel, or any close family member, employed in the banking or commercial loan industries, and if so, is there anything about that employment which would affect service on the jury?

11

6. Has any member of the panel or any close family member ever felt discriminated against by an employer, and if so, is there anything about that experience which would affect service on the panel?

7. Has any member of the panel, or any close family member, been a plaintiff or a defendant in a lawsuit, and if so, is there anything about that experience which would affect service on the panel?

8. Has any member of the panel, or any close family member, ever been a supervisor, responsible for the hiring and firing of employees, and if so, is there anything about that experience which would affect service on the panel?

9. Has any member of the panel, or any close family member, ever filed a grievance or complaint of discrimination, or had a grievance or complaint filed against you, and if so, is there anything about that experience which would affect service on the panel?

10. Would the date of trial, or the number of days necessary for the trial, present hardship to any member of the panel, and if so, why?

## X. WITNESSES

### Plaintiff's Witnesses

1. **James Rogers**

To testify to the claims of age discrimination and incidences of age bias/discrimination during the FBI Selection process

2. **Sheldon Wishnick**

To provide expert testimony regarding plaintiff's calculation of damages.

**Defendant's Witnesses**

1.    **Patricia Sargent**

To testify to the FBI process in general and the selection process as applied to the plaintiff.

2.    **Ron Prestwich**

To testify to his scoring of the plaintiff in the target selection interview process.

3.    **Heidi Siebert**

To testify to her scoring of the plaintiff in the target selection interview process.

4.    **Paula Currivan**

To testify to her conversations with the plaintiff concerning the May, 1998 vacancy for Financial Specialist Sales Leader.

5.    **Bob Brotherton**

To testify to the design of the FBI selection process and the FBI selection process components furnished by outside vendors.


XI.    <u>EXHIBITS.</u>

**Plaintiff's Exhibits**

1.    Performance reviews for past three years.

2.    Email describing First Union's position to select from FBI candidates for remaining positions.

**Defendant's Exhibits**

1.    List of new pay grades for FBI job titles

2.    Jim Rogers' leader application questionnaire

3.    Panel interview guide completed by Ron Prestwich

4.    Panel interview guide completed by Heidi Siebert

5.    Jim Rogers' consumer team leader scoring grid

6.    Performance review ratings analysis

7.    AccuVision Videotape test tape

8.    James Rogers AccuVision scoring sheet

9.    Summary exhibit of FBI scoring results

10.   FBI scores spread sheets

11.   Job offer letter to plaintiff dated April 21, 1998 with enclosures

12.   Responses to Plaintiff's appeal dated May 13, 1998 and March 27, 1998

13.   Summary exhibit of applicants for May, 1998 Financial Specialist Sales Leader

14.   Dorothy Aiken consumer team leader scoring grid

15.   Plaintiff complaint affidavit face sheet to Commission on Human Rights and Opportunities

XII. <u>**DEPOSITION TESTIMONY.**</u>

**Plaintiff:**

Ronald Prestwich

Patricia Sargeant

Sheldon Wishnick

**Defendant:**

None anticipated by defendant.

XIII.     <u>**REQUESTED JURY INSTRUCTIONS.**</u>

See joint request attached.

XIV.     <u>**ANTICIPATED EVIDENTIARY PROBLEMS.**</u>

1.     The defendant intends to file a motion in limine against the plaintiff's use of the Economic Report and Analysis (damages analysis) dated December 30, 2003 prepared by Sheldon Wishnick on the ground that the analysis is based on erroneous assumptions and facts and lacks the necessary foundation required by Rule 702, FRE.

2.     The defendant will object to deposition testimony by Sheldon Wishnick unless compliance with Rule 32(a)(3) FRCP can be shown at time of trial.

15